UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WALSH HAUPT & ASSOCIATES, INC.,
d/b/a THE ORIGINAL MONKEY BREAD,

    Plaintiff,

v.                                        Case No:  2:21-cv-265-JLB-MRM

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

    Defendant.

## ORDER

Plaintiff, Walsh Haupt & Associates, Inc., d/b/a the Original Monkey Bread ("Walsh"), operates a bakery in Naples, Florida.  Walsh was forced to suspend operations when, in response to the coronavirus pandemic, governmental orders prohibited access to its bakery.  It submitted a claim for business losses under a commercial property insurance policy ("Policy") to its insurer, Defendant Westchester Surplus Lines Insurance Company ("Westchester").  Westchester denied the claim and Walsh now sues for breach of contract.  (Doc. 1-1.) Westchester moves for judgment on the pleadings, arguing that Walsh did not suffer any physical loss or damage to its insured property and thus Walsh's claim is not covered under the Policy.  (Doc. 15.)  The Court agrees.  The Policy's plain and unambiguous provisions of coverage do not extend to purely economic harms without accompanying physical property damage.  And because Walsh has not and

cannot allege any physical property damage occurred here, Westchester's Motion (Doc. 15) is **GRANTED**.

## BACKGROUND[1]

The Complaint alleges that "[a]s a result of . . . [the] COVID-19 pandemic, state and local governments issued" orders "which prohibited and/or limited" customer and employee access to "[Walsh's] business, resulting in the suspension of operations at the insured premises." (Doc. 1-1 at 2, ¶ 9.) "As a result, [Walsh] sustained business losses." (Id. ¶ 10.) The Complaint alleges that these unspecified losses "are ongoing and will continue in the future." (Id.)

In its denial letter of Walsh's insurance claim, Westchester acknowledged that Walsh could not "operate business as usual" because of the "government mandated closures." (Doc. 23-1 at 1.)[2] But it denied Walsh's claim because

---

[1] A motion for judgment on the pleadings may be granted "when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any judicially noticed facts." Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998). "In determining whether a party is entitled to judgment on the pleadings," the Court "accept[s] as true all material facts alleged in the non-moving party's pleading, and" views "those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted). "The ultimate question on a motion for judgment on the pleadings under [Federal] Rule [of Civil Procedure] 12(c) is the same as on a motion to dismiss under Rule 12(b)(6)—whether the complaint states a claim for relief." Powers v. Sec'y, U.S. Homeland Sec., 846 F. App'x 754, 757 (11th Cir. 2021) (citing Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)).

[2] Walsh attaches the denial letter to its response in opposition. (Doc. 23-1.) "[O]n a motion for judgment on the pleadings, documents that are not a part of the pleadings may be considered, as long as they are central to the claim at issue and their authenticity is undisputed." Perez, 774 F.3d at 1340 n.12. As Walsh represents, "[t]he parties are in general agreement regarding the facts connected to

- 2 -

nothing suggested Walsh suffered "any direct physical loss of or damage to [the insured property]." (Id. at 3.) Westchester also denied the claim because the governmental orders restricting access to Walsh's bakery "were issued to curtail the spread of the COVID-19 virus," not because "any direct physical loss or damage . . . caused such orders to be issued." (Id. at 1.)

The Complaint does not cite any specific Policy provision's text. Nevertheless, Walsh's response explains that it is relying on the Policy's Business Income and Extra Expense provisions. (Doc. 23 at 7, 13.)[3] The Business Income provision obligates Westchester to "pay for the actual loss of Business Income [Walsh] sustain[s] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration.'" (Doc. 1-1 at 49 § A.1.) "The 'suspension' must be caused by direct physical loss of or damage to property . . . ." (Id.) "The loss or damage must be caused by or result from a Covered Cause of Loss." (Id.) The Extra Expense provision covers "necessary expenses [Walsh] incur[red] during the 'period of restoration' that [it] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." (Id. at 49 § A.2.b.) Last, as specified in the Policy, a Covered Cause of Loss "means direct physical loss unless the loss is excluded or limited in [the] [P]olicy." (Id. at 58 § A.)

---

this matter." (Doc. 23 at 1.)

[3] Walsh does not seek coverage under the Policy's Civil Authority provision. (Doc. 23 at 18.)

Read together, the above provisions make it clear that the Policy does not cover claims for business losses unless those losses arise from some "direct physical loss of or damage to" the insured property. Noteworthy, though, is that the Policy does not define the qualifying phrase, "direct physical loss or damage." (Cf. id. at 49 § A, 58 § A.) For its part, Westchester maintains that this requires a "distinct, demonstrable, physical alteration" of property. (Doc. 15 at 16.) Applying this requirement, Westchester maintains that Walsh fails to state a claim for coverage because it has alleged only intangible, economic losses. (Id. at 11.) Walsh, in response, emphasizes the disjunctive "or" and distinguishes a direct physical loss of property from direct physical damage to property. (Doc. 23 at 2–3, 13–15.) Stated differently, Walsh maintains that the insured property need not suffer any structural alteration for the Policy to cover its business losses. Rather, Walsh argues that the coronavirus pandemic caused a direct physical loss of its bakery because Walsh could not access its insured property, and the bakery was rendered unfit for its intended purpose. (Id. at 14–15.)

## DISCUSSION

"In interpreting an insurance contract, [courts] are bound by the plain meaning of the contract's text." State Farm. Mut. Auto. Ins. Co. v. Menendez, 70 So. 3d 566, 569 (Fla. 2011). When faced with an undefined term, the Court "'may consult references' such as dictionaries to discern the plain meaning of an insurance policy's language." Bioscience W., Inc. v. Gulfstream Prop. and Cas. Ins. Co., 185 So. 3d 638, 640 (Fla. 2d DCA 2016) (quoting Garcia v. Fed. Ins. Co., 969 So. 2d 288,

292 (Fla. 2007)).  "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." Menendez, 70 So. 3d at 569–70 (quoting Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 785 (Fla. 2004)).  Last, "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007) (quoting Auto–Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla.2000)).

Walsh has not plausibly alleged that it has suffered a covered cause of loss under the Policy because its losses are not "physical," as that term is understood in ordinary parlance.  For example, Florida courts interpret "direct physical loss" as necessarily contemplating a demonstrable, physical change to the insured property which requires repairs be made to return it to its original, structural condition. Homeowners Choice Prop. & Cas. v. Maspons, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017) (quoting Loss, Black's Law Dictionary (10th ed. 2014)); see also Scherder v. Aspen Am. Ins. Co., No. 2:20-cv-697-JLB-NPM, 2021 WL 3550368, at *3–4 (M.D. Fla. Aug. 11, 2021).  Further, the requirement that a covered loss be physical—as "physical" is plainly understood in its ordinary usage—excludes intangible, incorporeal losses (e.g., loss of income) unaccompanied by a physical, structural change of the property.[4]

---

[4] "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal," thereby precluding "any claim against the property insurer when the

- 5 -

No matter how dangerous coronavirus may be to human health, virus particles do not and cannot cause direct physical loss or damage to property. Walsh's damages do not flow from any direct physical alteration coronavirus caused to its bakery's structure. Rather, it was the measures government took to combat the spread of coronavirus which precluded access to Walsh's bakery thereby causing its economic losses. To illustrate, the Eleventh Circuit recently reached this same conclusion in two cases under New York and Georgia law. See Ascent Hosp. Mgmt. Co., LLC v. Emps. Ins. Co. of Wassau, No. 21-11924, 2022 WL 130722 (11th Cir. Jan. 14, 2022); Gilreath Family & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co., No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021).

New York and Georgia interpret the qualifying phrase "direct physical loss or damage" in accord with Florida law. Compare Ascent, 2022 WL 130722, at *2, and Gilreath, 2021 WL 3870697, at *2, with Mama Jo's Inc. v. Sparta Ins. Co., 823 F. App'x 868, 879 (11th Cir. 2020). In Ascent, the Eleventh Circuit affirmed the district court's holding that "direct physical loss or damage requires an actual physical change to property that COVID-19 particles cannot cause because a contaminated location can be immediately restored to its previous state by cleaning and disinfecting—no repair or replacement required." Ascent, 2022 WL 130722, at

---

insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A Steven Plitt et al., Couch on Insurance § 148:46 (3d ed.), Westlaw (database updated June 2021); see also Physical, The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=physical (last visited Mar. 4, 2022) (defining physical as, "Of or relating to material things: a wall that formed a physical barrier; the physical environment [sic]").

\*3 (quotation omitted).   Likewise, in Gilreath, the Eleventh Circuit opined that the insured had "alleged nothing that could qualify, to a layman or anyone else, as physical loss or damage" because the governmental closure orders "did not damage or change the property in a way that required its repair or precluded its future use." 2021 WL 3870697, at \*2.

Here, the Complaint alleges that Walsh's losses resulted from a suspension of operations due to the government orders restricting access to its bakery in response to the coronavirus pandemic.   (Doc. 1-1 at 2, ¶¶ 9–10.)   Walsh has not alleged that these orders caused any tangible alteration to the bakery's physical structure. More broadly, Walsh's damages flow from the coronavirus which cannot cause direct physical loss or damage to property.   It could, for instance, resume operations as soon as the orders restricting access to its bakery were no longer in effect and without making any alteration whatsoever to its bakery beyond cleaning and disinfecting the insured property.

Walsh does not seem to dispute this, sidestepping the structural change requirement altogether, instead positing that the "Policy clearly contemplates coverage for loss of access to" insured property.   (Doc. 23 at 14 (emphasis added).) For example, it notes that the Policy's Electronic Data provision covers "the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss."   (Doc. 1-1 at 38 § A.4.f.(2).)   Walsh argues, "Data and Media are magnetic 'ones' and 'zeros'—intangible property that does not suffer demonstrable physical impairment or physical compromise" but that the Policy

nevertheless contemplates coverage for such losses.  (Doc. 23 at 14.)  Given that the Policy contemplates "coverage for loss of access to such data," Walsh maintains that "the Policy must be interpreted the same for other coverages that use the 'loss or damage to' language."  (Id.)

This reasoning is unpersuasive for at least two reasons.  First, this argument assumes "the words 'access to' are somehow implied in the relevant coverage language.  By [Walsh's argument], then, 'direct physical loss[]' [of] property is equivalent to 'direct physical loss of <u>access to</u>' property."  AE Mgmt., LLC v. Ill. Union Ins. Co., 524 F. Supp. 3d 1340, 1344 (S.D. Fla. 2021) (emphasis in original).  That language, however, is contained in neither the Policy's Business Income nor Extra Expense provisions.

Second, "[i]n law as in life, . . . the same words, placed in different contexts, sometimes mean different things."  Yates v. United States, 574 U.S. 528, 537 (2015) (plurality opinion).  Covered Cause of Loss in the Electronic Data provision "include[s] a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation."  (Doc. 1-1 at 38 § A.4.f.(3)(d).)  The Business Income and Extra Expense provisions omit this expanded definition of Covered Cause of Loss.  This is crucial because Covered Cause of Loss, as defined in the Electronic Data provision, necessarily contemplates harms from and to "intangible ones and zeros" (i.e., electronic data).

Walsh's argument compares a building's physical structure with the electronic information stored on a computer. The latter is "tangible" insofar as a person views the data on a computer, unless he or she transfers that data to another "tangible" medium (e.g., printing a photo). This important distinction cuts against applying the "loss of or damage to" language uniformly amongst the three provisions, as Walsh urges. (Doc. 23 at 14.) See Nationwide Mut. Fire Ins. Co. v. Olah, 662 So. 2d 980, 982 (Fla. 2d DCA 1995) ("When construing an insurance policy to determine coverage the pertinent provisions should be read in pari materia." (emphasis added)); Walker v. State Farm Fire & Cas. Co., 758 So. 2d 1161, 1162 (Fla. 4th DCA 2000) ("Insurance contracts are to be reviewed as a whole, viewing all words in context." (emphasis added)). After all, the "structure of the policy and the placement of a provision within the policy is key to this analysis." People's Tr. Ins. Co. v. Tosar, No. 3D20-0729, 2021 WL 5912737, at *7 (Fla. 3d DCA Dec. 15, 2021) (citing Express Damage Restoration, LLC v. Citizens Prop. Ins. Corp., 320 So. 3d 305, 308 (Fla. 3d DCA 2021)).

Words mean what they are ordinarily understood to mean, unless otherwise specified. And what insurance policies cover is discerned from the text of the policy when its words are plain and unambiguous. That is the situation here. Although the Court empathizes with the financial loss incurred from the coronavirus, the insurance policy that was bargained for by the parties here simply does not cover the intangible losses sought in the Complaint. For these reasons, Westchester is entitled to judgment on the pleadings.

## CONCLUSION

At bottom, the Court fully accepts Walsh's bakery "lost [its] ability to function for [its] intended purpose." (Doc. 23 at 14.) Even so, the text of the Policy's Business Income and Extra Expense provisions only cover claims arising from a direct physical loss of or damage to the insured property. Even more, in Florida, this requires that the loss physically modify the insured property's structure. And because Walsh can only claim that the coronavirus-related orders prohibited access to its bakery, it fails to state a claim for coverage under the Policy. Accordingly, Westchester's motion (Doc. 15) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending deadlines, and close the file.

**ORDERED** at Fort Myers, Florida, on March 4, 2022.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE